IN THE UNITED STATES DISTRICT COURT
DISTRICT OF COLORADO
SENIOR JUDGE MARCIA S. KRIEGER

Civil Action No. 18-cv-02957-MSK-NRN

M.M.A. DESIGN, LLC,

    Plaintiff,

v.

CAPELLA SPACE CORPORATION, and
THOMAS J. HARVEY,

    Defendants.

___

**OPINION AND ORDER DENYING MOTION TO DISMISS**
___

**THIS MATTER** comes before the Court pursuant to Defendant Capella Space Corporation's ("Capella") Motion to Dismiss **(# 32)**, Plaintiff M.M.A. Design, LLC's ("MMA") response **(# 38)**, and Capella's reply **(# 41)**.

## FACTS

The Complaint **(# 2)** in this matter is lengthy and rife with unnecessary detail, but the basic contours of MMA's claims are straightforward. MMA is a business involved in the design and manufacture of solar arrays and antennas used on satellites. MMA was owned by Defendant Thomas J. Harvey and two other individuals.

In early 2016, Capella, a company engaged in the manufacture, launch, and operation of satellites, contacted MMA about designing and building satellites that Capella would deploy. As discussions progressed, and the entities shared more detailed information, they entered into a Confidentiality Agreement. Under this Agreement, Capella promised that it would only use MMA's proprietary information and trade secrets for the purpose of "evaluating the feasibility of

1

a business relationship with MMA and performing its obligations and exercising its rights under any such business relationship that is agreed to between the parties."

In the summer of 2016, MMA developed specifications for a satellite antenna to meet Capella's needs. ¶ 82.[1] MMA alleges that the specifications constitute proprietary information belonging to MMA. ¶ 83. MMA also alleges that Capella sent MMA's specifications to MMA's competitors, and invited them to submit bids to produce and supply an antenna with such specifications. ¶ 85. MMA also alleges that it provided a proposal to Capella for an antenna, again disclosing substantial amounts of MMA's proprietary and trade secret information. ¶ 92.

During these negotiations, Mr. Harvey's relationship with MMA became strained for various reasons. MMA alleges that one reason was that Mr. Harvey formed a separate consulting business that competed directly with MMA. Mr. Harvey resigned from MMA's employment in August 2016, but he retained partial ownership in the company. Ultimately, litigation ensued between Mr. Harvey and MMA's other owners over whether Mr. Harvey breached fiduciary duties to MMA. In September 2016, Capella requested MMA to produce the antenna it had proposed at a dramatically lower price than Capella had committed to pay. MMA contends that Capella did so with the intention of sabotaging any business relationship with MMA. ¶ 117. Sometime thereafter, Capella and Mr. Harvey agreed that Mr. Harvey would consult directly with Capella to design and deploy the antenna. ¶ 123. Mr. Harvey explained to Capella that he would "need to recreate the IP that I did at MMA" and would attempt to "find a way around the MMA patent" that covered the technology in question. ¶ 132, 134. MMA contends that Mr. Harvey appropriated proprietary testing protocols that belonged to MMA and used them with

---

[1] Citations to numbered paragraphs reflect the corresponding paragraph in the Complaint.

Capella, and that the antenna that Mr. Harvey designed for Capella incorporated a variety of MMA's trade secrets and proprietary information. ¶ 138-146.

Based on these facts, MMA asserts the following claims against Capella: (i) breach of contract, in that Capella breached the terms of the Confidentiality Agreement by disclosing MMA's proprietary and trade secret information to others and by using that information for the purpose of designing its own antenna to the exclusion of MMA; (ii) misappropriation of trade secrets in violation of the Federal Defend Trade Secrets Act ("FDTSA"), 18 U.S.C. § 1836; (iii) misappropriation of trade secrets in violation of the Colorado Uniform Trade Secrets Act ("CUTSA"), C.R.S. § 7-74-101 *et seq.*; (iv) common law unfair competition, apparently under Colorado law, in that Capella (in concert with Mr. Harvey) misappropriated MMA's proprietary information for its own benefit; and (v) common law unjust enrichment, apparently under Colorado law, based on the same facts.

Capella moves **(# 32)** to dismiss MMA's claims, arguing: (i) as to the contract claim, that the Complaint fails to allege facts sufficient to demonstrate Capella's breach of the Confidentiality Agreement or injuries sustained by MMA because of any breach; (ii) as to the federal and state trade secret claims, the Complaint fails to allege facts showing Capella's misappropriation of any trade secrets; and (iii) as to the common law claims, such claims are preempted by CUTSA and Colorado's Economic Loss Rule.

## ANALYSIS

### A. Standard of review

In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept all well-pleaded allegations in the Amended Complaint as true and view those allegations in the light most favorable to the nonmoving party. *Stidham v. Peace Officer Standards & Training*,

265 F.3d 1144, 1149 (10th Cir. 2001) (quoting *Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999)).  The Court must limit its consideration to the four corners of the Amended Complaint, any documents attached thereto, and any external documents that are referenced in the Amended Complaint and whose accuracy is not in dispute. *Oxendine v. Kaplan*, 241 F.3d 1272, 1275 (10th Cir. 2001); *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002); *Dean Witter Reynolds, Inc. v. Howsam*, 261 F.3d 956, 961 (10th Cir. 2001).

A claim is subject to dismissal if it fails to state a claim for relief that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  To make such an assessment, the Court first discards those averments in the Complaint that are merely legal conclusions or "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* at 678-79.  The Court takes the remaining, well-pleaded factual contentions, treats them as true, and ascertains whether those facts (coupled, of course, with the law establishing the requisite elements of the claim) support a claim that is "plausible" or whether the claim being asserted is merely "conceivable" or "possible" under the facts alleged. *Id.* What is required to reach the level of "plausibility" varies from context to context, but generally, allegations that are "so general that they encompass a wide swath of conduct, much of it innocent," will not be sufficient. *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012).

### B. Breach of contract claim

The parties appear to agree that the Confidentiality Agreement is governed by California law.  Under that law, MMA's breach of contract claim must allege facts that, if true, would plausibly establish: (i) the existence of a contract, (ii) MMA's performance of its obligations under that contract or an excuse for non-performance; (iii) Capella's breach of its obligations under the contract; and (iv) injury to MMA as a result. *Walsh v. West Vallen Mission*

4

*Community College Dist.*, 78 Cal.Rptr.2d 725, 733 (Cal.App. 1998). Capella challenges the sufficiency of allegations as to the third and fourth elements.

As to a breach of the Confidentiality Agreement, Capella contends that if it provided MMA's proprietary antenna specifications to MMA's competitors – and the Court must assume that, consistent with the allegations in the Complaint, it did[2] -- it did so for the purpose of "evaluat[ing] the feasibility of an ongoing relationship with MMA," a purpose permissible under the Confidentiality Agreement. This argument merely proffers one of many possible interpretations that could be given to the facts alleged in the Complaint, but the Court is required on a motion to dismiss to draw all reasonable inferences from the allegations in MMA's favor. Thus, although it is <u>possible at trial</u> that the factfinder might decide that Capella's purpose in disclosing the specifications to MMA's competitors was simply to evaluate the appropriateness of an ongoing relationship with MMA, at this juncture the Court must give deference to the inference that Capella's actions were taken for reasons prohibited under the Confidentiality Agreement. Accordingly, the Court finds that MMA has adequately alleged facts demonstrating a breach of that contract.

The Court also rejects Capella's arguments that the Complaint fails to allege facts, rather than conclusions, relating to Capella's misappropriation of MMA's trade secrets when designing its own antenna. The Complaint specifically articulates numerous specific items of its trade secrets and proprietary information that are implicated by Capella's antenna design and a fair reading of the Complaint provides Capella with notice that it claims that such items were infringed by that design. *See generally Yeiser Research & Dev. LLC v. Teknor Apex Co.*, 281

---

[2] Consistent with its obligations to construe the facts alleged in the Complaint as true, the Court has disregarded the numerous occasions when Capella's motion attempts to refute the accuracy of MMA's factual contentions.

F.Supp.3d 1021, 1044 (S.D.Ca. 2017) ("because it is the defendant who knows what it misappropriated, a plaintiff should not be required to plead with specificity all of its possible trade secrets in order to proceed to discovery"). This is sufficient.

As to Capella's argument that the Complaint fails to allege facts showing that MMA was injured by Capella's disclosure of the specifications and use of MMA's protected information when designing its own antenna, MMA primarily relies upon a provision the Confidentiality Agreement that declares that any breach of that agreement would "cause [it] substantial and irreparable injury."

This Court has profound doubt that such contractual provision is a substitute for specific allegation of fact demonstrating the existence of an actual injury. However, the Complaint contains sufficient allegations to create the inference of an actual injury, sufficient to allow the breach of contract claim to proceed. The Complaint alleges that MMA and Capella were productively negotiating a potential agreement for MMA to design and manufacture antennas for Capella's satellites, but once Capella obtained certain information, it abruptly ceased such negotiations and instead hired Mr. Harvey to produce the antenna that MMA had already designed. This suggests that MMA lost business that it had anticipated with Capella. MMA <u>may</u> be able to prove (and the Court expresses no opinion as to whether it can) that without the Defendants' misappropriation of the confidential information, Capella would have had no other viable option but to purchase the antennas from MMA. In such circumstances, the measure of MMA's loss is the value of the antennas it would otherwise have provided. Whether MMA can ultimately marshal sufficient proof of that theory is a matter that is best considered at the summary judgment stage, not via a motion to dismiss. Accordingly, the Court allows the breach of contract claim to proceed.

### C. Trade secret claims

The FDTSA provides that a trade secret "misappropriation" occurs upon the "acquisition of a trade secret . . . by a person who knows or has reason to know that the trade secret was acquired by improper means" or upon the "disclosure or use of a trade secret" by a person who "at the time of disclosure or use, knew or had reason to know" that the secret had been obtained through various improper means. 18 U.S.C. § 1839(5)(A), (B)(ii). CUTSA provides effectively the same definition of "misappropriation." C.R.S. § 7-74-102(2)(a), (b)(II). Capella argues that both the federal and state trade secret claims fail because the Conplaint fails to adequately allege Capella's knowledge that the trade secrets in question had been misappropriated by Mr. Harvey.

The Complaint adequately alleges facts that, if proven, would permit a factfinder to conclude that Capella knew or had reason to know that Mr. Harvey may have misappropriated MMA's trade secrets. Among other things, the Complaint alleges that Capella was aware that Mr. Harvey would have to "recreate the IP that I did at MMA" and to "find a way around the MMA patent" in order to build an antenna for Capella. ¶ 132, 134. Capella specifically requested that Mr. Harvey provide it with "your employment agreement, any IP assignment, non-compete agreements, etc." with MMA, indicating that Capella may have anticipated the possibility that Mr. Harvey's acrimonious departure from MMA might have ramifications on Mr. Harvey's ability to use (or even "recreate") MMA's intellectual property. ¶ 136. These facts, coupled with Capella's knowledge of Mr. Harvey's acrimonious departure from MMA and litigation that had ensued between Mr. Harvey and the other owners of MMA, could permit the factfinder the conclude that Capella "had reason to know" that Mr. Harvey was using trade secrets belonging to MMA. Accordingly, the trade secret claims will proceed.

### D. Common-law claims

MMA asserts common-law claims sounding in unfair competition and unjust enrichment. Capella argues that such claims are either preempted by CUTSA or by the breach of contract claim.

CUTSA provides that it "displaces conflicting tort, restitutionary, and other laws of this state providing civil remedies for misappropriation of a trade secret," but it expressly exempts contractual remedies and "other civil remedies that are not based upon misappropriation of a trade secret." C.R.S. § 7-74-108(1), (2). MMA concedes that, to the extent its common-law claims are predicated on trade secrets, they would be preempted. However, MMA contends that those claims apply to Capella's misuse of MMA's information that, although confidentially disclosed, might not rise to the level of a "trade secret." This Court has previously found that common-law claims stemming from the improper use of non-trade secret information avoids CUTSA preemption. *L-3 Commc'ns Corp. v. Jaxon Eng'g & Maint., Inc.*, 863 F.Supp.2d 1066, 1087, 1090-91 (D. Colo. 2012). The same reasoning applies here and MMA's common-law claims will proceed to the extent they concern information that is not a "trade secret" under state law. [3]

As to Capella's argument that Colorado's Economic Loss Rule precludes MMA's common-law claims, the Economic Loss Rule provides that "a party suffering a loss from breach of an express or implied contractual duty may not assert a tort claim for such loss unless there is an independent duty of care under tort law." *SGS Acquisition Co. Ltd. v. Linsley*, 352 F.Supp.3d 1109, 1125 (D.Colo. 2018). Capella argues that any obligations it had regarding MMA's

---

[3] The FDTSA expressly declines to preempt state common-law remedies that might apply to misuse of a trade secret. 18 U.S.C. § 1838.

information derived solely from the terms of the parties' Confidentiality Agreement, and thus, MMA's common-law claims would be preempted by its breach of contract claim. In response, MMA argues that Capella came into possession of some forms of MMA's (non-trade secret) proprietary information not through the Confidentiality Agreement, but by virtue of Mr. Harvey improperly providing it to Capella. In such circumstances, neither the trade secret nor breach of contract claims would apply, yet MMA may still have a common-law right to recover for Capella's use of such information. In such circumstances, MMA's common-law claims would remain viable. Whether there are facts that will ultimately support all three types (trade secret, contractual, and common law) of claims is a matter that is best deferred to future summary judgment proceedings. For now, it suffices that the Court deny Capella's motion to dismiss.

## CONCLUSION

For the foregoing reasons, Capella's Motion to Dismiss **(# 32)** is **DENIED**.

Dated this 21st day of August, 2019.

**BY THE COURT:**

_/s/ Marcia S. Krieger_

Marcia S. Krieger
Senior United States District Judge